BOYD, Justice.
Fred Weller, Nolan Popenhager, R. L. Burnett and Dixie Williams, four owners of land in The Big Cypress Area of Florida, brought suit in the Leon County Circuit Court for a declaration of their rights and injunctive relief. The suit was defended by the Governor and Cabinet in the dual capacities of Board of Trustees of the Internal Improvement Fund and Head of the Department of Natural Resources. During the proceedings the plaintiffs challenged the validity of Section 380.055, Florida Statutes, the statute which designates Big' Cypress an area of critical state concern and sets up a plan for state and federal acquisition of the area leading to federal ownership. In an order denying the requested relief Judge James E. Joanos passed directly on the validity of Section 380.055, Florida Statutes. We have jurisdiction of the landowner’s direct appeal. Article V, Section 3(b)(1), Florida Constitution. We affirm. Although the arguments raised by appellants do not necessitate much discussion, we set out the facts of the case in detail to demonstrate the importance of what is at stake in this proceeding.
The Big Cypress Area lies in Lee, Collier and Monroe Counties, just north of the Everglades National Park. The area’s importance to the state cannot be underestimated.[1] The watershed it contains is a vital hydrological resource. It provides sheet water flow to the Everglades, a recognized natural resource. It has a direct relationship to the freshwater aquifer which supplies the water for nearly all of the people of South Florida. And it feeds the estuaries on which many Florida fisheries depend.
In 1973 the Legislature enacted “The Big Cypress Conservation Act,” Section 380.055, Florida Statutes. The enactment was undertaken both to accomplish the purposes of “The Florida Environmental Land and Water Management Act of 1972,” by designating the Big Cypress Area an area of critical state concern and to implement Article II, Section 7, of the Florida Constitution, the provision declaring the state’s policy to conserve and protect its natural resources and scenic beauty.
The Act also was part of the state’s contribution to a joint effort with the federal government to protect the Big Cypress watershed. In Congress legislation had been proposed to establish the Big Cypress National Preserve so that the watershed would come under federal protection. In contemplation that the federal legislation would pass, the Florida Act set out a program for state action, essentially in three steps, for turning over land and water areas in the Big Cypress Area, both owned by the state and to be acquired from private owners, to the proposed Preserve. See Section 380.-055(5), Florida Statutes. First, an agreement between Florida and the federal government for acquisition of privately owned areas would be entered. Pending federal action the Governor and Cabinet would begin interim acquisition immediately on behalf of the state. Second, the Governor and Cabinet were to set aside from *1093 the proceeds of the full faith and credit bonds authorized by the Land Conservation Act of 1972 or other appropriate funds $40 million for the acquisition. Third, the Governor and Cabinet were empowered to donate and convey title in the land and water areas to the United States once the federal government expended funds for acquisition costs at least equal to those expended by the state for acquisition.
While final action on the proposed federal legislation was pending and an agreement with the federal government setting forth an acquisition plan was under negotiation, the state initiated the interim process for acquisition as directed by Section 380.-055(5)(a), Florida Statutes. The Department of Natural Resources prepared a report dated January 25, 1974 and entitled “Recommendation for Land Acquisition in the Big Cypress National Preserve.” There is a reference to the report in a Resolution[2] of the Governor and Cabinet, as the Head of the Department. The resolution refers also to “consultation between the Department and . . . affected landowners [which] has produced general agreement as to a specific part of the recommended total acquisition area in which proposed land acquisition efforts by the state should be initiated.”[3] By this document the Governor and Cabinet resolved to “proceed independently with implementation of a land acquisition plan” and to acquire any and all of the lands within the recommended initial acquisition area as shown on an attached boundary map.[4] The resolution was signed by the Governor and Cabinet on March 19, 1974.
On October 11, 1974 Congress enacted Public Law 93-440 establishing the Big Cypress Preserve. See 16 U.S.C. § 698f et seq. Little more than two months later the United States, acting through the Secretary of the Interior, and the State of Florida, as authorized by Section 380.055(5)(a), entered an agreement for acquisition of privately owned lands in the Preserve. The agreement made the federal government the sole acquiring agency for most of the privately owned land in the Preserve. But, it provided that Florida could unilaterally terminate U. S. acquisition services if the state, in its discretion, determined they were not proceeding satisfactorily. The federal government began the acquisition process.
The four landowners, disturbed that the federal acquisition proceedings were in a “checkerboard” fashion likely to reduce the value of their lands rather than in the “orderly” fashion contemplated by the March 16 resolution and the fashion they thought had been agreed to at their meeting with the Department of Natural Resources, brought suit in Leon County Circuit Court. The suit sought a declaration of rights and an injunction of the ongoing acquisition process. They raised several claims in support of an injunction. One was that the funding of the present acquisition process by full faith and credit bonds violated Article VII, Section 11(a), Florida Constitution. That provision bans the issuance of state bonds pledging the state’s full faith and credit except “to finance or refinance the cost of state capital projects upon approval by a vote of the electors . . ..” As to this claim, Judge Joanos perceived the issue to be, not whether the project was a “capital” one, but whether it was a “state” one, in light of the expected donation of the land to the federal government. The judge felt that if the Governor/Cabinet’s power to donate the lands were unrestricted, so that Florida would lose any interest in the land, then the project would not be a “state” one and the plan would be unconstitutional. But, the judge found that under the Act any such donation would be subject to Florida’s enforceable right to have the land made part of the Big Cypress National Preserve, with all the environmental protection that would go with it. And, the judge found proof of the state’s enforceable right to federal environmental protection for the Big Cypress Area in the agreement the *1094 Governor and Cabinet had entered with the U. S. Department of the Interior. Accordingly, the judge declared that the agreement aided the Act to satisfy the “state bond” requirements of the Florida Constitution and ordered summary judgment in favor of the Governor and Cabinet on the constitutional issue.
A bench trial was held on the remaining issues. One issue concerned donations of the land under the Turner River, which runs through the Big Cypress Area, and is navigable. Lands under navigable rivers, unalienated with the 1968 Constitution was adopted, are sovereignty lands and held in trust for the people of this state. Under Article X, Section 11, Florida Constitution, such lands may be sold when authorized by law “but only when in the public interest.” The landowners proposed that this provision bars the donation of the land under the Turner River. In an order entitled “Findings” the trial judge did not directly address this contention. Instead, he found that although the Act used the word “donate,” the transaction could not be characterized truly as a “donation.” It was something more than that because the state exchanged the right to ownership for the valuable consideration of having the area, including the land below the river, incorporated into the Big Cypress National Preserve.
At the trial, too, the landowners charged that the Legislature had unlawfully delegated authority to acquire land in the Big Cypress Area to the federal government. The trial judge disagreed, finding the state to have retained the ultimate acquisition authority over the land through the unlimited termination power it kept under the agreement with the Interior Department.
Finally, the landowners argued that the March 19 resolution was either a contract between them and the Governor/Cabinet that legally prevented the way the acquisition was proceeding, or, at least, equitably estopped acquisition. The trial judge found the resolution not to be a contract between the landowners had rendered no consideration in support of it and the landowners had no obligations under it. And the judge found any agreement without equitable effect.
In keeping with his findings the judge entered a final judgment as to all issues in favor of the Governor and Cabinet. The landowners appealed directly here. Essentially, they renew the claims they made before the trial court. We affirm the orders of Judge Joanos in every material respect.
We reject the notion that the project is not a state one so that it may not be funded by state full faith and credit bonds. The eventual control of the land by the federal government does not detract from the state status of the project. The project was undertaken to further this state’s policy to conserve and protect state natural resources and scenic beauty pursuant to Article II, Section 7 of the Florida Constitution. By contributing to the achievement of federal environmental protection for the Big Cypress Area the funds from the full faith and credit bonds aid in the accomplishment of this important state goal.
The “Donation” to the federal government of the sovereignty lands under the Turner River will not violate Article X, Section 11, Florida Constitution. When the provision was adopted as part of the 1968 Constitution it gave constitutional dimensions to the common law doctrine applicable in the state that the beds of navigable waters are held in trust for the people. See Broward v. Mabry, 58 Fla. 398, 50 So. 826 (1909). On its face the authorization for placing the sovereignty lands under federal environmental protection is certainly not a violation of that trust. And the record of this proceeding does not in any way show a violation. The provision is silent as to donations but as to a “sale” of sovereignty lands it requires that the sale be authorized by law and in the public interest. Without characterizing the donation as a sale, but for the sake of argument, if the transaction for turning the lands over to the federal government is a sale, it meets both requirements. It is authorized by law and its goal of environmental protection is unquestionably in the public interest.
*1095 As to appellants’ claim that they are being damaged by the state’s failure to comply with representations made by officials of the Department of Natural Resources about the order of acquisition, there is no proof in the record of a contract. There is no legal or equitable relief available to them on this claim. The other arguments raised by appellants are without merit.
The orders of the Leon County Circuit Court in this proceeding are affirmed.
It is so ordered.
ENGLAND, C. J., and OVERTON and HATCHETT, JJ., concur.
ADKINS, J., dissents.

. See Report No. 93-502, submitted to accompany H.R. 10088 at the first session of the 93rd Congress by Representative Haley from the Committee on Interior and Insular Affairs.

.Attached as exhibit one to the plaintiffs’ amended complaint. Record-on-Appeal, p. 45.

. Id.

. Id. at 46.